UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ADAM QUINN, | : | |
| | : | |
| PLAINTIFF, | : | NO. |
| | : | |
| VS. | : | |
| | : | |
| CHIEF BRIAN GOULD | : | |
| and | : | |
| THE CITY OF BRISTOL, | : | |
| | : | |
| DEFENDANTS. | : | MAY 28, 2019 |

## C O M P L A I N T

### COUNT ONE

1. This is an action for money damages to redress the deprivation by the defendants of rights secured to the plaintiff by the laws of the United States and the State of Connecticut. The defendants subjected the plaintiff to, inter alia, discrimination, hostile work environment and retaliation, in violation of the rights secured to the plaintiff by the provisions of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C.A.§ 2000e. The defendants further subjected the plaintiff to violations his rights to equal protection and due process, secured to the plaintiff by the provisions of the United States Constitution, before the Court pursuant to 42 U.S.C.A.§ 1983. The municipal defendant has further incurred municipal liability.

The defendants further subjected the plaintiff to discrimination, hostile work environment and retaliation, in violation of the rights secured to the plaintiff by the provisions of the Connecticut Fair Employment Practices Act, C.G.S.A. § 46a-60, et seq.; to negligent supervision and to the intentional infliction of emotional distress, in contravention of the laws of the State of Connecticut, invoked pursuant to the Court's supplemental jurisdiction.

2. Jurisdiction of this Court is invoked under the provisions of Title 28 United States Code §§1331, 1343(3) and 1367(a), and Title 42 United States Code §§1981A, 1983, 1988 and 2000e-5(f).

3. The defendants recklessly, intentionally and maliciously discriminated against the plaintiff and treated him differently from similarly situated employees not of the plaintiff's race, color, ethnicity, or who had not complained about unlawful conduct. The defendants' treatment of the plaintiff was due to or motivated by plaintiff's race, color, ethnicity, or in retaliation for his complaints about unlawful conduct.

4. At all times mentioned herein, the plaintiff, Adam Quinn, was and is an adult resident of the City of Shelton, Connecticut. The plaintiff is an Hispanic male of Puerto Rican ancestry.

5. At all times referenced herein, the defendant Brian Gould was the Chief of the Bristol Police Department of the defendant City of Bristol, acting in his official capacity. The defendant Gould is sued both in his individual capacity and in his official capacity.

6. During all times mentioned in this Complaint, the defendant Gould was acting under color of law, that is, under color of the Constitution, statutes, laws, charter, ordinances, rules, regulations, customs and usages of the United States, the State of Connecticut, and the City of Bridgeport.

7. The defendant Gould acted intentionally or recklessly.

8. At all times referenced herein, the defendant City of Bristol was and is a municipal corporation organized under the Connecticut General Statutes.

9. At all times relevant to the instant complaint, the plaintiff was employed by the defendant City of Bristol as a Police Officer, employed in the Bristol, Connecticut Police Department, a department of the defendant.

10. At all times relevant to the instant complaint, the defendant City was and is an employer with more than 100 employees.

11. The plaintiff is one of only two Hispanic Police officers in the Bristol Police Department. Apart from two African-American Officers, the personnel of the Department, numbering approximately one hundred twenty one (122) are exclusively white, non Hispanic Caucasian.

12. From the outset, the plaintiff was treated differently and more harshly than his white non Hispanic counterparts, by both supervisors and fellow Officers.

13. Throughout his time as a Police Officer employed by the defendant City, the plaintiff has been scrutinized and monitored more closely than his white, non Hispanic counterparts.

14. For example, his response time to emergency calls for medical assistance has been monitored, evaluated and scrutinized by the defendants. No other non Hispanic white officer has ever been subjected to such scrutiny, despite the fact that white, non Hispanic Officers of the defendant City respond to emergency calls in a manner substantially similarly to the plaintiff.

15. The defendants monitored and scrutinized his response times so that they could fabricate discipline against the plaintiff. Defendants dis impose discipline upon the plaintiff for his response times to a small number of calls, recognizing that he timely responded to the overwhelming majority of such calls.

16. Monitoring of emergency response time has never been done on white, non Hispanic officers, and no white, non Hispanic officer has ever been disciplined for this.

17. In addition, the plaintiff has been disciplined more harshly than non Hispanic officers regarding the use of force. Although other similarly situated non Hispanic officers have used force similar to or greater than that used by the plaintiff, no other officer has been disciplined for use of force in the seven (7) years the plaintiff has been a Bristol Police officer.

18. As such, the plaintiff has been disciplined more harshly that his white, non Hispanic fellow officers.

19. The Supervisors of the defendant City who have treated the plaintiff differently from his similarly situated non Hispanic white colleagues are all white and non Hispanic. These Supervisors include, inter alia Captain Edward Spyros, Sergeant Craig Duquette, Sergeant Matthew Moskowitz, Lieutenant Dennis Daigneault, Lieutenant Michael Healey, and defendant Chief Brian Gould.

20. In addition to the above, Officer Gregory Lattanzio and Supervisor Lieutenant Dennis Daigneault made a false complaint about the plaintiff, which resulted in non Hispanic white males in his Department seeking and obtaining an arrest warrant for the plaintiff, and subjecting him to arrest. Lattanzio is a non Hispanic white male.

21. As a result, the plaintiff was suspended from the Department for thirty (30) days.

22. In many instances, investigation and discipline of the plaintiff has been made upon the false statements of his white, non Hispanic colleagues. When the plaintiff brings these falsehoods to the attention of the defendants, they are ignored.

23. Investigation and discipline of the plaintiff has been based upon white, non Hispanic Supervisors of the defendant City ordering Officers to make or participate in complaints against him, when otherwise no complaint would have been made.

24. This conduct has resulted in the plaintiff being subjected to numerous Internal Affairs Investigations and a written agreement subjecting him to close monitoring, all with the intention of terminating him from the overwhelmingly white Department, because the plaintiff is Hispanic.

25. The defendants have initiated, and subsequently, found many Internal Affairs investigations against the plaintiff to be "substantiated". In instances where white, non Hispanic officers of the defendant City engaged in similar or worse conduct than alleged against the plaintiff, the defendant has found such claims to be "not substantiated". Discipline, including further suspension, has been imposed upon the plaintiff based upon these unfair IA investigations.

26. The plaintiff has been subjected to racist remarks about Hispanics. He has been present when defendant's employees and agents Sergeant Duquette and Lieutenant Daigneault have made such racist comments.

27. This conduct occurs at the workplace. The statements include such derogatory comments as "Hey, we just arrested another Jose and maybe we should send his wetback ass back to Mexico". In addition to the gross racism of these statements, Duquette and Daigneault have implied that, to them, all Hispanics are the same.

28. Daigneault has a history of harassment and discrimination. Before being hired by the Bristol Police Department, Daigneault was forced to resign from the Glastonbury Police Department because of sexual harassment.

29. While a Supervisor in that department, Daigneault showed a female officer pornographic material, and showed her a photograph of his genitals he had taken with the police department's camera. On one occasion, Daigneault ordered the female officer over the police radio at 3 a.m. to meet him behind a business in a heavily wooded area. There, Daigneault used his police cruiser to block her car into a small space between some trees. He got out of the car and walked toward her cruiser with his hands on his zipper, and unzipped his pants in front of her. Daigneault was subsequently given a polygraph test three times regarding his conduct toward the female officer. The examiner determined that "Agent Daigneault was not truthful in his response to the questions." He resigned from the department in October 1993, one day after failing the polygraph tests relating to the charges.

30. The defendant City was aware of this when it hired Daigneault.

31. The plaintiff complained to the defendants about the discrimination and mistreatment to which he was subjected. For example, in 2015 the plaintiff filed a formal complaint against Lieutenant Daigneault and in January, 2016 the plaintiff filed a formal complaint against Sergeant Craig Duquette. Neither Duquette nor Daigneault received

anything more then a verbal reprimand from the defendant Gould for their conduct against the plaintiff.

32. As a result of his complaints, the defendant ordered its white, non Hispanic personnel to "document every little thing on Quinn" so that it could further disciple him, up to termination.

33. In October, 2017, the plaintiff heard Supervisor Lieutenant Healey instruct another white, non Hispanic Sergeant, Ulric Berube, to so scrutinize and document him. Healey said that he wanted everything the plaintiff did to be documented and ordered that the plaintiff was to be written up for any infraction, no matter how minor.

34. This level of scrutiny and documentation is not used on the plaintiff's white, non Hispanic fellow officers.

35. The harassment and discrimination is continuous and ongoing to the present. On or about February 15, 2018, the defendants found against the plaintiff in five (5) Internal Affairs Investigations.

36. The defendants have imposed, and continues to impose punishment upon and discipline upon the plaintiff in retaliation for his complaints, and because of his Hispanic race and/or heritage.

37. As detailed herein and continuing to the present, the defendants subjected the plaintiff to an ongoing pattern of discrimination, harassment, disparate treatment,

hostile work environment and retaliation. The conduct is continuous, persistent and ongoing.

38. The plaintiff has exhausted his administrative remedies in this matter, and has sought and received a Notice of Right To Sue letter from the United States Equal Employment Opportunity Commission, and a Release of Jurisdiction from the Connecticut Commission on Human Rights and Opportunities.

39. The plaintiff was treated differently and more harshly than similarly situated employees of the defendant City due to the plaintiff's race, color, ethnicity, or in retaliation for the plaintiff's complaints about the defendants' conduct.

40. The conduct of the defendant City constitutes discrimination, hostile work environment and retaliation, in violation of the rights secured to the plaintiff by the provisions of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C.A.§ 2000e.

41. As a direct and proximate result of the acts of the defendants, the plaintiff has suffered, continues to and will into the future suffer severe financial harm and loss, loss of employment rights, duties, obligations or benefits, severe emotional distress, loss of personal and professional reputation, humiliation, embarrassment, loss of privacy, upset, anxiety, inconvenience, physical harm, loss of property, and loss of employment opportunities.

**COUNT TWO**

1 - 39. Paragraphs 1 through 36 of Count One are hereby made Paragraphs 1 through 39, respectively, of Count Two.

40. The conduct of the defendant Gould violates the Due Process and Equal Protection clauses of the United States Constitution.

41. As a direct and proximate result of the acts of the defendants, the plaintiff has suffered, continues to and will into the future suffer severe financial harm and loss, loss of employment rights, duties, obligations or benefits, severe emotional distress, loss of personal and professional reputation, humiliation, embarrassment, loss of privacy, upset, anxiety, inconvenience, physical harm, loss of property, and loss of employment opportunities.

**COUNT THREE**

1 - 39. Paragraphs 1 through 39 of Count One are hereby made Paragraphs 1 through 39 respectively, of Count Three.

40. The conduct of the defendant City constitutes discrimination, hostile work environment and retaliation, in violation of the rights secured to the plaintiff by the provisions of the Connecticut Fair Employment Practices Act, C.G.S.A. § 46a-60, et seq.

41. As a direct and proximate result of the acts of the defendants, the plaintiff has suffered, continues to and will into the future suffer severe financial harm and loss,

loss of employment rights, duties, obligations or benefits, severe emotional distress, loss of personal and professional reputation, humiliation, embarrassment, loss of privacy, upset, anxiety, inconvenience, physical harm, loss of property, and loss of employment opportunities.

**COUNT FOUR**

1 - 39.  Paragraphs 1 through 39 of Count One are hereby made Paragraphs 1 through 39 respectively, of Count Four.

40. The conduct of the defendants constitutes negligent supervision pursuant to the laws of the State of Connecticut.

41.  As a direct and proximate result of the acts of the defendants, the plaintiff has suffered, continues to and will into the future suffer severe financial harm and loss, loss of employment rights, duties, obligations or benefits, severe emotional distress, loss of personal and professional reputation, humiliation, embarrassment, loss of privacy, upset, anxiety, inconvenience, physical harm, loss of property, and loss of employment opportunities.

**COUNT FIVE**

1 - 39.  Paragraphs 1 through 39 of Count One are hereby made Paragraphs 1 through 39 respectively, of Count Five.

40.  The actions of the defendants as detailed in the foregoing paragraphs were extreme and outrageous.

41. The actions of the defendants were intentional.

42. The actions of the defendants were likely to cause emotional distress, and that emotional distress was severe.

43. The actions of the defendants constitute the intentional infliction of emotional distress.

44. As a direct and proximate result of the acts of the defendants, the plaintiff has suffered, continues to and will into the future suffer severe financial harm and loss, loss of employment rights, duties, obligations or benefits, severe emotional distress, loss of personal and professional reputation, humiliation, embarrassment, loss of privacy, upset, anxiety, inconvenience, physical harm, loss of property, and loss of employment opportunities.

**COUNT SIX**

1 - 39. Paragraphs 1 through 39 of Count One are hereby made Paragraphs 1 through 39 respectively, of Count Six.

40. The defendant City of Bristol is the highest policy setting authority on matters related to the instant complaint, including, inter alia the hiring, training, supervision, investigation and discipline of its Police Department personnel, including all defendants and those individuals named in the instant Complaint.

41. A municipal policy or custom exists in the defendant City as a result of the municipality's deliberate indifference to the violation of constitutional rights.

42. The actions and conduct of the defendant City, inter alia, by and through the defendants, evidence an official policy or custom which has caused the plaintiff to be subjected to a denial of one or more of his constitutional rights.

43. As such, the defendant City of Bristol has incurred municipal liability.

44. As a direct and proximate result of the conduct of the defendant City, the plaintiff has suffered, continues to and will into the future suffer severe financial harm and loss, severe emotional distress, loss of personal and professional reputation, humiliation, embarrassment, loss of privacy, upset, anxiety, inconvenience, physical harm, loss of property, and loss of employment opportunities.

**WHEREFORE**, the plaintiff claim judgment against the defendants as follows:

A. Compensatory damages;

B. Punitive damages;

C. Attorney fees and the costs of this action pursuant to all applicable provisions of state and federal law;

D. Equitable relief pursuant to 29 U.S.C.A.§§ 626(b) and (c), 633a(b) and (c) and all other applicable provisions of state and federal law;

E. Such other relief as this Court shall consider to be fair and equitable.

## **CLAIM FOR JURY TRIAL**

The plaintiff claims trial by jury of all issues in this case.

        THE PLAINTIFF


        BY_____/s/_____
                WILLIAM S. PALMIERI
                Juris No. 409481
                Law Offices of William S. Palmieri, L.L.C.
                110 Whitney Avenue
                New Haven, CT 06510
                (203) 562-3100
                (203) 909-6006 (fax)
                wpalmieri@hotmail.com
                His Attorney